Hast, J.
The question chiefly presented is whether, for the purpose of determining the basis of taxation, *148 the rebuilding of such machine tools constituted manufacturing or repairing. In each of the tax returns in question, Eastern listed all its machine tools on hand during the preceding fiscal years, which had not been rebuilt but were being held for that purpose, at 50 per cent of their true value. It claims that such listing was in accord with the provisions of subparagraph (2) of Section 5388, General Code, which authorizes a 50 per cent value listing “of all articles purchased, received or otherwise held by a manufacturer for the purpose of being used, in whole or in part, in manufacturing, [or] combining * * *; [and] the average value of all articles which were at any time by him manufactured or changed in any way, either by combining * * * or adding thereto. ’ ’
The Tax Commissioner concedes that Eastern was a “manufacturer” within the purview of Section 5385, General Code, so far as it made the parts used to replace worn and broken ones, but was a “repairer” in performing the other operations involved in rebuilding the machines.
The question, therefore, is what is the percentage of value at which-machine tools held for rebuilding should be listed for tax purposes. The answer depends upon whether Eastern, in carrying on the business above described, was engaged in manufacturing within the purview of Sections 5385 and 5388, General Code.
Section 5385, General Code, defines, for tax purposes, a manufacturer as follows :
“A person who purchases, receives or holds personal property * * * for the purpose of adding to the value thereof by manufacturing * * * or by the combination of different materials with a view of making a gain or profit by so doing, is a manufacturer * * *.”
The Board of Tax Appeals proceeded on the assumption that, since the General Assembly, in enacting *149 the statutes, granted manufacturers a “preferential tax base” amounting to a partial tax exemption, the statutes should be strictly construed against the claim of a manufacturer or one engaged in manufacturing seeking the 50 per cent property valuation as a tax base. However, a study of the legislative history of these statutes tends to dispel that assumption and conclusion. These statutes were amended by the Eighty-ninth General Assembly by the enactment of Amended Senate Bill No. 323, pursuant to the recommendation of a committee expressly stating the purpose of the amendment to be “to equalize the taxes of manufacture and agriculture, so that additional wealth may be developed in this state, ’ ’ and to that end ‘ ‘ all appraisals [of tangible personal property] are to be made at seventy per cent of such value, except in the case of tools and machinery used in manufacturing and agriculture, in which case, to assist Ohio business in competition with other states, the rate is to be fifty per cent of such value. ’ ’
As bearing upon statutory construction applicable to such cases, this court, in the case of Mutual Building & Investment Co. v. Efros, 152 Ohio St., 369, 373, 89 N. E. (2d), 648, held:
“Language employed in a statute should be accorded its common, ordinary and usually accepted meaning in the connection in which it is used, and statutory provisions should be given a fair and reasonable construction in conformity to their general object in order to effectuate such object and purpose.”
In addition to the statutory definition above quoted, these statutes, as related to the subject of taxation, tend to broaden the traditional definition of “manufacturer” or “manufacturing.” Under Section 5385, General Code, one is deemed a “manufacturer” if he purchases, receives or holds personal property of any *150 description for the purpose of adding to the value thereof by refining, rectifying or combining different materials. The statute applies to personal property “of any description” processed for the purpose of adding to its value by manufacturing, and to articles changed in any way by adding thereto.
Under Section 5388, General Code, it is not required that articles purchased be “consumed directly” in the production of property for sale by manufacturing, as is required under Section 5546-1, General Code, relating to exceptions from sales taxes, but articles which are manufactured or changed in any way either by combining them or adding thereto are entitled to enjoy the status of a preferential tax base.
The Board of Tax Appeals concedes that Eastern was engaged in manufacturing so far as it made new parts but holds that it was a mere repairer when it engaged in the rebuilding of machine tools, basing its holding on the theory that the restoration of a commodity to its original condition is repairing, not manufacturing, and giving as illustrations the operations by which office equipment, kitchen appliances, furniture, radio and television sets, watches, shoes, automobile tires, antiques and automobiles are restored to their original condition. In the view of this court, the operations carried on by Eastern as a business were not comparable to such relatively simple repair jobs, but in the main comprehended the rebuilding of a machine, so as to serve a different purpose or the same purpose in a better or different manner, as a commercial or business enterprise.
In the ease of Miller v. Peck, Tax Commr., 158 Ohio St., 17, 106 N. E. (2d), 776, in which the operative scope of Section 5388, General Code, was under consideration, the writer of this opinion said:
“The term, ‘manufacturing,’ is otherwise defined as *151 the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery. * * *
“Usually, where, through the use of tools and machinery, commodities or items of personal property are by special treatment or processing transformed into other more valuable items of personal property as a commercial business, the operation is that of manufacturing. ’ ’
In the case of Broad Motors Co. v. Smith, 86 F. Supp., 4, the rebuilding of automobile motors was held to be manufacturing. The taxpayer was engaged in the business of purchasing, rebuilding and selling Ford motors on an exchange basis. Purchasers of the rebuilt motors exchanged their used motors for rebuilt ones, paying the difference in price therefor. The rebuilding operations of the taxpayer consisted of replacing worn and broken parts with new ones purchased from the original manufacturers of the motors, and with used parts salvaged from other motors on hand. In the operations some machining and cleaning were done on the used parts before they were assembled as parts of the rebuilt motors.
The question for determination was the liability of the taxpayer for taxes imposed by Section 3403 (c) of the Internal Revenue Code on a “manufacturer or producer,” defined in treasury regulations as “a person who * * * produced a taxable article by combining or assembling two or more articles.” The court, holding that the rebuilding of the motors was “manufacturing,” said:
“ * * * the excise tax paid by the taxpayer was solely on a taxable article, namely, the rebuilt motor which was manufactured, produced and sold by the taxpayer. The used parts utilized by the taxpayer had lost their *152 identities as such parts for commercial as well as for practical usage purposes. Cadwalader v. Jessup & Moore Paper Co., 149 U. S., 350, 354, 37 L. Ed., 764, 13 S. Ct., 875. It was necessary to remake them into useful articles so as to enter into the flow of commerce. It was the machining and cleaning operations which made the ‘used’ parts useful. The machining of the old parts coupled with the production and sale of rebuilt motors in which ‘new’ and ‘used’ parts were combined resulted in the levying of the excise taxes involved in this action. The rebuilt motor was a new article, something entirely different from the worn out motor turned in, and made up of component parts which, because of the machining and cleaning done on them, were different from the used parts salvaged from the turned-in motors.”
In the case of Clawson & Bals, Inc., v. Harrison, Collector of Internal Revenue, 108 F. (2d), 991 (certiorari denied, 309 U. S., 685, 84 L. Ed., 1028, 60 S. Ct., 808), involving liability for taxes levied under the same federal statute, it was held that the rebuilding of automobile connecting rods constituted manufacturing and not repairing. The taxpayer bought used connecting rods which it rebuilt and sold. The rebuilding process required grinding and machining operations and the replacement of worn out parts with new ones. The court said :
“The situation here seems to be much like the situation in the worn-out tire case. (Biltrite Tire Co. v. The King, 1937 Canada Law Rep., 364). These worn-out connecting rods undoubtedly look like connecting rods, and one can recognize that they have been connecting rods, just as one can by looking at a worn-out tire recognize the fact that it has been a tire. But in each case, the articles are worn out. A manu *153 factoring process is, in the opinion of the court, required to make a serviceable product; and in the case of the connecting rod, the plaintiff carries on that manufacturing process.”
In response to the contention that the taxpayer was engaged in repairing, the court further held:
“There is obvious difficulty in treating the taxpayer as a repairer in view of the normal concept of the relation of a repairer to the repaired article. Ordinarily the repairer furnishes labor and material to the owner of some article for the purpose of restoring the article to its normal condition. The article remains the property of the one for whom the service is performed. If this taxpayer is a repairer it is a repairer of its own property, not for the purpose of restoring its own property for efficient use in the ordinary operations of the taxpayer’s business, but for the purpose of preparing the property for sale in the trade. In the transactions between the taxpayer and its vendees the connecting rods, whether prepared from new forgings or from old connecting rods, are treated as newly and freshly produced automobile accessories. Neither taxpayer nor the trade recognizes that the finished connecting rods are repaired rods. Looked at from the standpoint of production and distribution in the trade the taxpayer is performing the function of a manufacturer rather than a repairer. The taxpayer is producing connecting rods for the trade in a very true sense and not repairing old connecting rods for owners or users.”
The same result was reached in the case of United States v. Armature Exchange, Inc., 116 P. (2d), 969, 971, involving the rebuilding and sale of armatures. The court said:
“We cannot find any justification for reading into the statute involved here, as taxpayer would have us *154 do, the qualification that the articles ‘manufactured or produced’ must have been manufactured or produced entirely from new or virgin raw materials. * * *
“The government contends, and we think correctly, that the discarded armatures purchased by the taxpayer, -having lost their function as a useful article as well as their commercial value as such, when acquired for use in the manufacturing and production of an article of commerce, bear the same relation to the completed armature as the purchase of unused materials would bear to the completed article. See Cadwalader v. Jessup & Moore Paper Co., 149 U. S., 350, 13 S. Ct., 875, 37 L. Ed., 764. The article resulting from the use of the discarded core with new materials, and through the employment of skill, labor and machinery, is, as it seems to us, a manufactured and produced article of commerce.” See, also, United States v. J. Leslie Morris Co., Inc., 124 F. (2d), 371.
It is true that in each of the federal cases here cited, the court sustained a tax against a manufacturer in favor of the federal taxing authority, but this court does not see any difference in principle, as applied to the facts, where, as here, the policy of the General Assembly expressed through the applicable statutes is to’ place manufacturing on a more favorable. tax basis.
The decision of the Board of Tax Appeals is reversed and the Tax Commissioner is directed to make an appraisal of the property in question in accordance with the views herein expressed.

Decision reversed.

Middleton, Taet, Matthias and Stewart, JJ., concur.